**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

TOM MOHR,

Plaintiff,

vs.

GENER8 MARITIME, INC., PETER C. GEORGIOPOULOS, ETHAN AUERBACH, NICOLAS BUSCH, DAN ILANY, ADAM PIERCE, ROGER SCHMITZ, and STEVEN D. SMITH,

Defendants.

Case No.:

**DEMAND FOR JURY TRIAL**

**COMPLAINT FOR VIOLATION OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff Tom Mohr ("Plaintiff") brings this suit for violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934. In support of this complaint, Plaintiff, by his attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action against Gener8 Maritime, Inc. ("Gener8" or the "Company") and Gener8's Board of Directors (collectively, the "Board" or the "Individual Defendants," as further defined below) for violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act"), and Rule 14a-9 promulgated thereunder ("Rule 14a-9").

2. On December 21, 2017, Euronav NV ("Euronav") and the Company announced that they had entered into a definitive agreement ("Merger Agreement") under which Euronav will acquire all of the outstanding shares of Gener8 in an all-stock transaction (the "Proposed Transaction"). Under the terms of the agreement, Euronav MI Inc. ("Merger Sub"), a corporation organized under the laws of the Republic of the Marshall Islands and a wholly-owned subsidiary

of Euronav will merge with and into Gener8, with Gener8 continuing as a wholly-owned subsidiary of Euronav. If consummated, Gener8 stockholders will receive 0.7272 shares of Euronav stock for each share of Gener8 stock that they own ("Exchange Ratio"). The Proposed Transaction stands to create the world's largest independent crude tank operator with 75 vessels, in a deal valued at approximately $1.8 billion.

3. On February 14, 2017, defendants issued materially incomplete and misleading disclosures in the Form F-4 Registration Statement (the "Registration Statement") filed with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction. The Registration Statement is deficient and misleading in that it fails to provide adequate disclosure of all material information related to the Proposed Transaction. Specifically, as set forth herein, the Registration Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (a) the sales process leading up to the Proposed Transaction; (b) the financial projections for Gener8, Euronav, and the Combined Company, as provided by Gener8 to the Company's financial advisor UBS Securities LLC ("UBS") for use in its financial analyses; and (c) the data and inputs underlying the financial valuation analyses that purport to support the fairness opinions provided by UBS. The failure to adequately disclose such material information constitutes a violation of §§ 14(a) and 20(a) of the Exchange Act, as stockholders need such information in order to make a fully-informed vote on the Proposed Transaction.

4. For these reasons and as set forth in detail herein, the Individual Defendants, and the Company, have violated federal securities laws in connection with the filing of materially deficient and misleading Registration Statement. Accordingly, Plaintiff seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Individual Defendants' violations of these laws. Judicial intervention is warranted here to rectify existing and future irreparable harm to the Company's stockholders.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, pursuant to 15

U.S.C. § 78aa (federal question jurisdiction), as Plaintiff alleges violations of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

6. The Court has personal jurisdiction over each of the Defendants because each either is a corporation that conducts business in and maintains operations in this District or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because: (a) Gener8 maintains executive offices here; (b) a substantial portion of the transactions and wrongs complained of herein occurred here; and (c) Defendants have received substantial compensation and other transfers of money here by doing business here and engaging in activities having an effect here.

**PARTIES**

8. Plaintiff is, and has been at all relevant times, the owner of shares of Gener8 common stock.

9. Defendant Peter C. Georgiopoulos ("Georgiopoulos") has served as Gener8's Chief Executive Officer since May 7, 2015, and as Gener8's Chairman and one of its directors since December 2008.

10. Defendant Ethan Auerbach ("Auerbach") has been a director of the Company since February, 2013.

11. Defendant Nicolas Busch ("Busch") has been a director of the Company since May, 2015.

12. Defendant Dan Ilany ("Ilany") has been a director of the Company since May, 2015.

13. Defendant Adam Pierce ("Pierce") has been a director of the Company since May, 2012.

14. Defendant Roger Schmitz ("Schmitz") has been a director of the Company since

May, 2015.

15. Defendant Steven D. Smith ("Smith") has been a director of the Company since January, 2014.

16. Defendants Georgiopoulos, Auerbach, Busch, Ilany, Pierce, Schmitz, and Smith are collectively referred to herein as the "Board" or the "Individual Defendants."

17. Defendant Gener8 is a leading U.S.-based provider of international seaborne crude oil transportation services. On a fully-delivered basis, Gener8 Maritime's fleet of 31 vessels fleet has a total carrying capacity of approximately 7.8 million deadweight tons, making it one of the largest providers of international seaborne crude oil transportation in the world. The Company is incorporated under the laws of the Marshall Islands and maintains its headquarters at 299 Park Avenue 2nd Floor New York, NY 10171. Gener8's's common stock is traded on the New York Stock Exchange under the symbol "GNRT."

18. The Individual Defendants and Gener8 are referred to collectively herein as "Defendants."

**OTHER RELEVANT ENTITIES**

19. Euronav is an independent tanker company engaged in the ocean transportation and storage of crude oil. The Company, together with its subsidiaries, owns, operates, and manages a fleet of vessels for the ocean transportation and storage of crude oil and petroleum products worldwide. Incorporated in Belgium, Euronav is headquartered De Gerlachekaai 20, Antwerp C9 2000, Belgium, and has offices throughout Europe and Asia. Euronav's common stock is traded on the New York Stock Exchange under the symbol "EURN."

20. Merger Sub is a corporation organized under the laws of the Republic of the Marshall Islands and is a wholly-owned subsidiary of Euronav,

**FURTHER SUBSTANTIVE ALLEGATIONS**

21. On December 21, 2017, Gener8 and Euronav issued a joint press release announcing the Proposed Transaction as follows:

ANTWERP, Belgium, and New York, New York, 21 December 2017 – The Boards of Euronav NV (NYSE: EURN & Euronext: EURN) ("Euronav" or the "Company") and Gener8 Maritime, Inc. (NYSE: GNRT) ("Gener8") are pleased to announce that they have reached an agreement on a stock-for-stock merger for the entire issued and outstanding share capital of Gener8 pursuant to which Gener8 would become a wholly owned subsidiary of Euronav (the merger to form the "Combined Entity").

The merger will create the leading independent large crude tanker operator including:

- 75 crude tankers, including 44 VLCCs and 28 Suezmax crude tankers, representing over 18 million DWT in the aggregate.
- Combined Entity balance sheet assets of over USD 4 billion.
- Estimated pro-forma market capitalization of approximately USD 1.8 billion based on Euronav's closing price of USD 8.10 per share on 20 December 2017.
- Marked-to-market leverage of less than 50% for the Combined Entity.
- A liquidity position estimated at more than USD 750 million, including cash on hand and undrawn amounts available under existing credit facilities.

KEY TRANSACTION TERMS

- 0.7272 Euronav shares for each share of Gener8 (the "Exchange Ratio") which is expected to result in the issuance of approximately 60.9 million new Euronav shares to Gener8 shareholders.
- The Exchange Ratio was calculated on the basis of several factors, including a relative net asset value (NAV) methodology analysis.
- The Exchange Ratio implies a premium of 35% paid on Gener8 shares based on the closing share prices on 20 December 2017.
- The merger will result in Euronav shareholders owning approximately 72% of the issued share capital of the Combined Entity and Gener8 shareholders owning approximately 28% (based on the fully diluted share capital of Euronav and the fully diluted share capital of Gener8).
- The merger is subject to the approval of Gener8's shareholders, the consent of certain of Gener8's lenders to assign certain debt facilities to the Combined Entity, the effectiveness of a registration statement to be filed by Euronav with the U.S. Securities and Exchange Commission (the "SEC") to register the Euronav shares to be issued in the merger (the "New Registration Statement"), the listing of such shares on the New York Stock Exchange (the "NYSE") and other customary closing conditions.
- No additional equity issuance is currently contemplated beyond the approximately 60.9 million Euronav shares to be issued in exchange for Gener8 shares.
- Euronav as the Combined Entity will remain listed on NYSE and Euronext under the symbol "EURN."

• Carl Steen, Paddy Rodgers and Hugo De Stoop will remain respectively Chairman of the Board, CEO and CFO of the Combined Entity.
• The merger will require the approval of the holders of a majority of Gener8's outstanding shares. A group of shareholders, representing approximately 48% of the issued and outstanding shares of Gener8, including certain current directors of Gener8, have committed or are expected to commit to vote in favour of this merger, subject to the terms and conditions contained in voting agreements with Euronav.
• A reputable third-party tanker owner has agreed to purchase from the Combined Entity six modern VLCCs upon closing of this transaction at a price of USD 434 million. The sale will allow Euronav to maintain sustainable and robust financial ratios and keep leverage and liquidity well within Management's desired levels.

The Euronav NV board has unanimously approved the transaction and the merger does not require the approval of Euronav's shareholders. Euronav and Gener8 believe that the merger will:

• Be accretive to the shareholders of both companies and is consistent with previously set expansion criteria of Euronav.
• Create the world's leading independent crude tanker operator with 75 large crude tankers focused predominately on the VLCC and Suezmax asset classes and two FSO vessels in joint venture.
• Provide tangible economies of scale via pooling arrangements, procurement opportunities, reduced overhead and enhanced access to capital.
• Offer a well-capitalized, highly liquid company for investors to participate in the tanker market.
• Through commitment to the Tankers International Pool (a spot market-oriented tanker pool), provide the lowest commercial fees as a percentage of revenue in the sector upon closing of the merger.
• Allow Euronav to retain the same disciplined dividend policy for the Combined Entity.

One of the independent Board members of Gener8, Steve Smith, is expected to join the Board of Euronav following completion of the merger, which is expected by the latest end June 2018.

In arriving at the Exchange Ratio, Euronav has taken into account a number of factors including the estimated net asset values of each company, the recent share price performance of the two companies, and the opportunity to combine two tanker fleets with good prospects for stronger combined growth.

The Gener8 board believes that the terms of the merger are in the best interests of Gener8 shareholders.

The Euronav Board considers the merger to be in the best interests of Euronav shareholders as a whole and has unanimously approved the transaction.

For further information about the Merger, please refer to the New Registration Statement to be filed with the SEC by Euronav and the proxy statement to be filed by Gener8.

Commenting on the merger, Carl Steen, Chairman of Euronav said: "The merger between Euronav and Gener8 is expected to deliver real value for both sets of shareholders. The financial strength of the Combined Entity together with a strong leadership team will make it well placed to navigate the tanker cycle".

Paddy Rodgers, CEO of Euronav said: "This transaction marks an exciting development for Euronav. The merger creates the leading tanker company which is better placed to serve the needs of our customers and support our partners."

Peter Georgiopoulos, Chairman and CEO of Gener8 said: "I have been a vocal advocate for consolidation in the shipping industry and have always stated that we would be a willing buyer or seller depending upon what is best for our shareholders. This transaction creates the largest independent VLCC fleet in the world.

**The Registration Statement Misstates and/or Omits Material Information**

22. On February 14, 2018, the Company filed the materially misleading and incomplete Registration Statement with the SEC. Designed to convince stockholder to vote in favor of the Proposed Transaction, the Registration Statement is rendered misleading by the omission of critical information concerning (i) the financial projections relied upon by UBS in its financial analyses; (ii) data and inputs underlying the financial analyses conducted by UBS in connection with its fairness opinion; and (iii) the process leading to the signing of the Merger Agreement.

***Material Omissions Concerning the Company's Financial Projections***

23. In connection with Gener8's evaluation of the Merger, Gener8 made available to Euronav and to UBS, certain financial forecasts and unaudited prospective financial information relating to Gener8 on a stand-alone basis. Gener8 directed UBS to use and rely upon these projections for purposes of its financial analysis and opinion. With respect to Gener8's projected financial information, the Registration Statement omits material information pertaining to the financial projections, and the valuation analyses performed by the Board's financial advisor in connection with the Proposed Transaction.

24. Here, the Registration Statement provides financial projections, over a six-year period beginning in 2017, consisting of: (i) VLCC Time Charter Equivalent; (ii) Net Voyage

Revenues; (iii) Adjusted EBITDA; and (iv) Unlevered Free Cash Flow. Despite providing these projections and briefly discussing the inputs and assumptions used to calculate them, the Registration Statement omits to disclose the material line items used to calculate these projections.

25. First, with regard to the line items used to calculate VLCC Time Charter Equivalent, the Registration Statement fails to disclose: (i) total operating days; (ii) voyage revenues; and (iii) voyage expenses.

26. With respect to the projections for Net Voyage Revenues, the Registration Statement fails to provide: (i) voyage revenues; and (ii) voyage expenses.

27. Additionally, the Registration Statement fails to disclose the line items utilized to calculate the Company's unlevered free cash flows, including: (i) Proceeds from vessel sales; (ii) Changes in working capital; (iii) Dry-dock capital expenditures; and (iv) Capital expenditures for new-build vessels.

28. Finally, with respect to the line items used to calculate Adjusted EBITDA, the Registration Statement fails to disclose: (i) income; (ii) gains (losses) on vessel sales; (iii) interest expense (including commitment fees); (iv) impact of interest rate swaps fair value; (v) professional fees related to interest rate swaps; (vi) depreciation; (vii) non-cash G&A such as stock compensation; (viii) other financing costs; (ix) loss on litigation; and (x) other items, if any that neither relate to the ordinary course of Gener8's business nor reflect Gener8's underlying business performance.

29. These projections were provided to UBS and the Board, and used by UBS for the purpose of creating a fairness opinion that could then be used in soliciting stockholder approval of the Proposed Transaction. Because UBS's analyses were presented to the Gener8's stockholders as evidence of the fairness of the Proposed Transaction, the omission of the financial projections materially misleads those same stockholders as to the accuracy and value of the analyses.

30. The omission of this information renders certain portions of the Registration Statement materially misleading, including, inter alia, the following sections of the Registration Statement: (i) "Gener8's Reasons for the Merger; Recommendation of Gener8's Board of

Directors;" (ii) "Opinion of UBS, Gener8's Financial Advisor;" and (iii) "Unaudited Prospective Financial Information."

***Material Omissions Concerning Euronav's Adjusted Financial Projections***

31. In connection with Gener8's evaluation of the Merger, Gener8 received projections regarding Euronav on a stand-alone basis as prepared by Euronav management in conjunction with Euronav's financial advisers. These projections were then adjusted by Gener8 in light of, among other things, Gener8 management's views of future tanker spot rates. Gener8 made these adjusted projections available to Euronav and to UBS, and directed UBS to use and rely upon these adjusted projections for purposes of its financial analysis and opinion. With respect to this projected financial information, the Registration Statement omits material information pertaining to the financial projections, and the valuation analyses performed by the Board's financial advisor in connection with the Proposed Transaction.

32. Here, the Registration Statement provides financial projections, over a six-year period beginning in 2017, consisting of: (i) VLCC Time Charter Equivalent; (ii) Total Revenue; (iii) Adjusted EBITDA; and (iv) Unlevered Free Cash Flow. Despite providing these projections and briefly discussing the inputs and assumptions used to calculate them, the Registration Statement omits to disclose the material line items used to calculate these projections.

33. First, with regard to the line items used to calculate VLCC Time Charter Equivalent, the Registration Statement fails to disclose: (i) voyage revenues; and (ii) voyage expenses.

34. With respect to the projections for Total Revenues, the Registration Statement fails to provide: (i) Voyage times; (ii) bareboat charter revenues; (iii) spot voyages recognized rateably on a daily basis; and (iv) estimated length of each voyage.

35. Additionally, with respect to the line items used to calculate Adjusted EBITDA, the Registration Statement fails to disclose: (i) income; (ii) income from equity accounted investees; (iii) amortization of debt financing fees; (iv) gains (losses) on vessel sales/other tangible assets; (v) interest expense (including commitment fees); (vi) depreciation; and (vii) other items, if any

that neither relate to the ordinary course of Euronav's business nor reflect Euronav's underlying business performance.

36. Finally, the Registration Statement fails to disclose the line items utilized to calculate the Euronav's unlevered free cash flows, including: (i) Proceeds from vessel sales; (ii) dividends received from joint ventures; (iii) Changes in working capital; (iv) Dry-dock capital expenditures; and (v) Capital expenditures for new-build vessels.

37. These projections were adjusted by Gener8 and then subsequently used by UBS for the purpose of creating a fairness opinion that could then be used in soliciting stockholder approval of the Proposed Transaction. Accordingly, a full disclosure of the projections and the adjustments made to them by Gener8 management is essential to prevent Gener8 stockholders from being misled as to the accuracy and value of UBS's analyses and the desirability of the Proposed Transaction.

38. The omission of this information renders certain portions of the Registration Statement materially misleading, including, inter alia, the following sections of the Registration Statement: (i) "Gener8's Reasons for the Merger; Recommendation of Gener8's Board of Directors;" (ii) "Opinion of UBS, Gener8's Financial Advisor;" and (iii) "Unaudited Prospective Financial Information."

***Material Omissions Concerning The Combined Company's Financial Projections***

39. In addition to Gener8's financial projections and Euronav's adjusted financial projections, Gener8 management made available to UBS certain financial forecasts and unaudited prospective financial information relating to the Combined Company. Referred to in the Registration Statement as the "Combined Company Projections," these financial forecasts reflect numerous assumptions and estimates that Gener8 made in good faith in connection with the preparation of the adjusted Euronav projections and the Gener8 management projections. With respect to the Combined Company Projections, the Registration Statement omits material information pertaining to the financial projections, and the valuation analyses performed by the Board's financial advisor in connection with the Proposed Transaction.

40. Here, the Registration Statement provides financial projections, over a five-year period beginning in 2017, consisting of: (i) VLCC Time Charter Equivalent; (ii) Total Revenue; (iii) Adjusted EBITDA; and (iv) Unlevered Free Cash Flow. Despite providing these projections and briefly discussing the inputs and assumptions used to calculate them, the Registration Statement omits to disclose the material line items used to calculate these projections.

41. First, with regard to the line items used to calculate VLCC Time Charter Equivalent, the Registration Statement fails to disclose: (i) voyage revenues; and (ii) voyage expenses.

42. Additionally, with respect to the line items used to calculate Adjusted EBITDA, the Registration Statement fails to disclose: (i) how the estimated synergies were calculated; (ii) the Combined Company G&A expenses; and (iii) how the 1.5% per annum increase was determined.

43. Finally, the Registration Statement fails to disclose the line items utilized to calculate the Combined Company's unlevered free cash flows, including: (i) Proceeds from vessel sales/other tangible assets; (ii) dividends received from joint ventures; (iii) Changes in working capital; (iv) Dry-dock capital expenditures; and (v) Capital expenditures for new-build vessels.

44. As noted previously, because these projections were provided to UBS and the Board, and used by UBS for the purpose of creating a fairness opinion that could then be used in soliciting stockholder approval of the Proposed Transaction, the omission of the financial projections materially misleads Gener8 stockholders as to the accuracy and value of the analyses.

45. The omission of this information renders certain portions of the Registration Statement materially misleading, including, inter alia, the following sections of the Registration Statement: (i) "Gener8's Reasons for the Merger; Recommendation of Gener8's Board of Directors;" (ii) "Opinion of UBS, Gener8's Financial Advisor;" and (iii) "Unaudited Prospective Financial Information."

***Material Omissions Concerning UBS's Financial Analyses***

46. The Registration Statement describes UBS's fairness opinions and the various valuation analyses the financial advisor performed in support of its respective opinions. However,

the description of the UBS's fairness opinions and the underlying analyses omits key inputs and assumptions of Gener8 underlying these analyses. Without this information, as described below, Gener8 public stockholders are being misled as to what weight, if any, to place on UBS's fairness opinion in determining whether to vote in favor of the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Gener8 stockholders.

47. Specifically, with respect to the *Gener8 Discounted Cash Flow Analysis*, the Registration Statement fails to disclose the following information: (i) the specific inputs and assumptions used to calculate the discount rate range of 11.5% to 12.5%; (ii) the specific inputs and assumptions used to calculate the terminal value range of 0.0% to 2.0%; and (iii) the adjustments made to the Company's normalized capital expenditures. Similar omissions are present in UBS's *Euronav Discounted Cash Flow Analysis*, where the Registration Statement omits to disclose: (i) the specific inputs and assumptions used to calculate the discount rate range of 9.5% to 10.5%; and (ii) the specific inputs and assumptions used to calculate the terminal value range of 0.0% to 2.0%. Finally, with regard to the *Combined Company Pro Forma for the Merger Discounted Cash Flow Analysis*, the F-4 fails to disclose the following: (i) the specific inputs and assumptions used to calculate the discount rate range of 10.4% to 11.4%; (ii) the specific inputs and assumptions used to calculate the terminal value range of 0.0% to 2.0%; and (iii) the adjustments made to Euronav's normalized capital expenditures. The omission of this material financial information renders the summary of UBS's multiple DCF analyses and the derived values incomplete and misleading.

48. With respect to UBS's *Selected Public Companies Analysis*, the Registration fails to disclose: (i) The specific exchange ratio used to determine the enterprise value and equity value for Gener8 and Euronav on a standalone basis; (ii) the "other things" or multiples reviewed by UBS in addition to CY2017E, CY2018E, and the percentage of common equity value. Additionally, with regard to the *Selected Transactions Analysis*, the Registration Statement fails to disclose: (i) the date on which each of the selected transactions closed; and (ii) the value of each

selected transaction. Without such information, Gener8 stockholders are unable to determine how the Gener8's value compares to the other companies and the value of these transactions to the Proposed Transaction, thereby rendering the implied share price ranges set forth in the analyses misleading.

49. Finally, UBS performed a *Net Asset Value Analysis* of each of Gener8 and Euronav, using information from Gener8 and Euronav, as well as two internationally known maritime vessel appraisal companies, Clarkson Valuations Limited ("Clarkson") and VesselsValue Ltd. ("VesselsValue"). In doing so, UBS calculated NAVs of each of Gener8 and Euronav using: (i) total fleet value, which was comprised of the averages of the tanker fleet appraisals of each of Clarkson and VesselsValue, and, in the case of Euronav, remaining capital expenditures related to contracted vessel purchases, and the estimated value of Euronav's charters, as provided by Clarkson, excluding Nautic, Nectar, and Flandre which were on subject for sale as of the date indicated therein, and, in the case of Gener8, excluding Pericles, Horn, Argus, Zeus and Poseidon which were on subject for sale, (ii) in the case of Euronav, other assets, which included the estimated net present value of the projected cash flows from Euronav's joint ventures, assuming 50%–100% probability of renewal of its existing contract in 2022 through 2032, discounted at 6.0% for 2017–2022, and discounted at 9.0% thereafter, as well as certain other vessel related assets, (iii) net debt and net working capital, adjusted for expected net proceeds from sale of vessels which were on subject for sale, and (iv) estimated Merger related expenses. Despite disclosing how this analysis was conducted, the actual inputs and assumptions used in the analysis must be disclosed to Gener8 stockholders. Accordingly, Defendants must disclose: (i) the line items, noted above, that were used to calculate total fleet value; (ii) the specific inputs and assumptions used to calculate discount rate at 6.0% for 2017–2022, and discounted at 9.0% thereafter; (iii) Net debt; and (iv) Net working capital.

50. When a bankers' endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses are crucial to a fair presentation of the

material facts. Furthermore, the disclosure of projected financial information provides stockholders with the best basis to project the future financial performance of a company, and allows stockholders to understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. This information is therefore material, and must be disclosed if Gener8 stockholders are to make a fully informed decision. The omission of this information renders the statements made concerning the financial advisor's analyses and opinions materially misleading.

51. Without such undisclosed information, Gener8 stockholders cannot evaluate for themselves whether the financial analyses performed by UBS were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can evaluate the extent to which UBS's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

52. The omission of this information renders certain portions of the Registration Statement materially misleading, including, inter alia, the following sections of the Registration Statement: (i) "Gener8's Reasons for the Merger; Recommendation of Gener8's Board of Directors;" (ii) "Opinion of UBS, Gener8's Financial Advisor;" and (iii) "Unaudited Prospective Financial Information."

***Material Omissions Concerning the Background of the Merger Agreement***

53. Throughout the sale process that took place in 2016 and 2017, Gener8 received a number of acquisition proposals from various proposed third-parties. Although the Registration Statement notes that Gener8 engaged in exploratory evaluations regarding each of these strategic opportunities, the Registration Statement fails to provide the exact valuation of these bids.

54. Specifically, here, throughout the sales process, Gener8 was on the receiving end of bids by Company E in April 2017, by Company A in May 2017, by Company F in July 2017, by Company A in April 2017, and by Company G in May 2017, amongst others. However, the

omission of any information regarding the valuation of these indications of interest, and others, prevents Gener8 stockholders from properly evaluating whether the Proposed Transaction is in the best interest of Gener8 shareholders. Accordingly, a full disclosure of the valuation of these indications of interest is essential to prevent Gener8 stockholders from being misled as to the desirability of the Proposed Transaction.

55. The omission of this information renders certain portions of the Registration Statement materially misleading, including, inter alia, the following sections of the Registration Statement: (i) "Gener8's Reasons for the Merger; Recommendation of Gener8's Board of Directors;" and (iii) "Background of the Merger."

56. Based on the foregoing, the Registration Statement violates Section 14(a) of the Exchange Act and applicable SEC regulations by materially misleading Gener8 stockholders. Gener8 public shareholders lack critical information necessary to evaluate the Proposed Transaction. Moreover, without the key financial information and related disclosures, Gener8 public shareholders cannot gauge the accuracy and reliability of the financial analyses performed by UBS, and whether they can reasonably rely on the financial advisor's fairness opinion.

57. Accordingly, Plaintiff seeks, among other things, the following relief: (i) enjoinment of the Proposed Transaction; or (ii) rescission of the Proposed Transaction in the event that it is consummated and to recover damages resulting from Defendants' misconduct.

## FIRST CAUSE OF ACTION

### Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder

58. Plaintiff repeats and realleges each allegation set forth herein.

59. As detailed herein, Defendants disseminated the false and misleading Registration Statement specified above, which contained statements which, at the time and in the light of the circumstances under which they were made, were false and misleading with respect to material facts and which omitted to state material facts necessary in order to make the statements therein not false or misleading or necessary to correct earlier statements which had become false or

misleading, in violation of Section 14(a) of the Exchange Act and SEC Rules promulgated thereunder, including SEC Rule 14a-9.

60. By the use of the mails and by means and instrumentalities of interstate commerce and the facility of a national securities exchange, Defendants solicited and permitted the use of their names to solicit proxies or consents or authorizations in respect of the common stock of Gener8.

61. By virtue of their positions within the Company, the Individual Defendants were aware of this information and of their duty to disclose this information in the Registration Statement. The Registration Statement was prepared, reviewed, and/or disseminated by Defendants. The Registration Statement misrepresented and omitted material facts, including material information about the unfair sale process for the Company, the unfair consideration offered in the Proposed Transaction, and the actual intrinsic value of the Company's assets. Defendants were at least negligent in filing and disseminating the Registration Statement with these materially false and misleading statements and omissions. Defendants have also failed to correct the Registration Statement and the failure to update and correct false statements is also a violation of Section 14 of the Exchange Act and SEC Rules promulgated thereunder.

62. The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder would consider them important in deciding whether to vote in favor of and tender their shares in the Proposed Transaction. A reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Registration Statement and in other information reasonably available to stockholders.

63. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from immediate and irreparable injury, which defendants' actions threaten to inflict.

## SECOND CAUSE OF ACTION

**Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act**

64. Plaintiff repeats and realleges each allegation set forth herein.

65. The Individual Defendants acted as controlling persons of Gener8 within the meaning of Section 20(a) of the Exchange Act, as alleged herein. By virtue of their positions as officers and directors of Gener8 and their participation in and awareness of the Company's business and operations and their intimate knowledge of the materially false statements and omissions contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

66. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be false and misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

67. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. Among other things, the Registration Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, they were directly involved in the making of that document.

68. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered – descriptions which had input from the Individual Defendants.

69. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

70. Plaintiff has no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in Plaintiff's favor and against Defendants as follows:

a) declaring that the Registration Statement is materially misleading and contains omissions of material fact in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

b) preliminarily and permanently, enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

c) to the extent the Proposed Transaction is consummated prior to the Court's entry of a final judgment, awarding Plaintiff rescissory damages against the Individual Defendants, including, but not limited to, pre-judgment and post-judgment interest;

d) awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

e) granting Plaintiff such further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury for all issues so triable.

DATED: March 14, 2018

**LEVI & KORSINSKY LLP**

By: /s/ *Jonathan Lindenfeld*

Jonathan Lindenfeld (JL1990)
30 Broad Street, 24th Floor
New York, New York 10004

Telephone: (212) 363-7500
Facsimile: (866) 367-7171

*Counsel for Plaintiff*